STARKEY against PETERS and another, administrators of
R. W. HART :

### IN ERROR.

The principle that disconnected and independent claims cannot, (except by agreement or by virtue of the statute of set-off,) be applied to the extinguishment of each other, is applicable to the subjects of an action of account.

*A*, having advanced 500 dollars to *B*, took a receipt from *B* in these words : " Received of *A* 500 dollars—300 of which I am to give him credit for, and for which sum he is to pay himself out of money which he may collect for me ; the other 200 is left with me for safe-keeping, which I am to hand to him, when called for."  In an action of account, brought by *B* against *A* for claims which *B* had put into *A*'s hands for collection, it was held, 1. that *A*'s claim for the 200 dollars mentioned in the receipt, had no connexion with the claims in suit; 2. that the receipt showed no agreement to apply such claim of *A* in extinguishment of so much of his indebtedness to *B*, but the contrary; 3. that as the case was not claimed to be within the statute of set-off, *A* could not insist upon such application.

*It seems*, that the receipt of such 200 dollars by *B*, in the manner and for the purpose specified in the writing, without any demand made upon *B* therefor, created no debt against him, which *A* could in any way enforce.

THIS was an action of account, brought by *John S. Peters* and *William Jarvis*, administrators of the estate of *Richard W. Hart*, deceased, against *Stephen W. Starkey*, alleging, that from the 10th of *January*, 1834, to the 16th of *March*, 1837, the defendant was bailiff of said *Hart*, and during that time had the charge, care and management of sundry claims and demands in favour of and belonging to said *Hart*—[describ-

*Middlesex,*
July, 1846.

Starkey
*v.*
Peters.

ing them] which notes and accounts the defendant received, to collect and to secure the moneys due thereon, and to render a reasonable account of the same to said *Hart,* when he, the defendant, should be thereto requested; and that the defendant, during said time, received of the moneys of said *Hart,* divers large sums, [specifying them and the persons of whom they were received,] to render to said *Hart* his, the defendant's, reasonable account in the premises.

The superior court, at its term in *February,* 1845, having rendered judgment, that the defendant *do account* in and concerning the premises, appointed auditors, who reported, that the defendant was in arrear and indebted to the plaintiffs, as administrators of *Hart,* the sum of 233 dollars, 39 cents. Against the acceptance of this report the defendant filed his remonstrance, alleging the following facts. On the trial before the auditors, the defendant offered in evidence, in support of his charges and claims against said estate, a receipt, duly made and signed by said *Hart,* on the 16*th* of *March,* 1837, in the following terms : " Received of *S. W. Starkey,* five hundred dollars—four of this date, and one of *January* last—three of which I am to give him credit for, and for which sum he is to pay himself out of money which he may collect for me ; the other two hundred is left with me for safekeeping, which I am to hand to him, when called for. *Saybrook, March* 16*th,* 1837. *R. W. Hart.*" By this receipt and other evidence, the defendant claimed to have proved, that the sums of money therein specified, were, at the times therein stated, paid to and left with said *Hart,* in the manner and for the object therein mentioned ; and he therefore claimed, that said sums of money, with the interest, should be allowed to him, by the auditors, among his proper charges against said estate, for the purpose of extinguishing a like amount of the proper charges of said estate against him.

To the allowance of the last sum mentioned in the receipt, *viz.* the sum of 200 dollars, the plaintiffs objected, upon the ground that this sum was not included in the account against said estate, which was presented by the defendant to the plaintiffs, within the time limited by the court of probate for the exhibition of claims against said estate, but was first presented to them, for a reason by him given, after the expiration of that time ; and also upon the ground that it appears

from the receipt itself, that this sum was left with said *Hart* for an object independent of and distinct from the matters which are the subjects of this suit. The auditors sustained the objections of the plaintiffs, and allowed to the defendant the sum of 300 dollars and interest, but refused to allow to him said sum of 200 dollars, or any part thereof, for the purpose claimed by him.

*Middlesex,*
July, 1846.

Starkey
*v.*
Peters.

The court found the facts stated in the remonstrance to be true, but held them to be insufficient to set aside the report ; and therefore, accepted it, and rendered final judgment thereon for the plaintiffs.

To revise this decision the present writ of error was brought.

*Baldwin* and *McCurdy*, for the plaintiff in error, contended,

1. That his claim for the 200 dollars left with *Hart*, ought not to have been rejected, for the reason that it was not exhibited within the time limited by the court of probate. *Starkey* and *Hart* had each in his hands the money of the other. If *Hart* made no claim, *Starkey* had none to make. All that *Starkey* wanted was, to have the money already in *Hart's* hands applied to extinguish so much of *Hart's* claim against *Starkey* ; and this application the law would make, without any exhibition, or other action, on the part of *Starkey*. Suppose *Hart* had held a note against *Starkey*, which *Starkey* had paid ; would it be necessary for *Starkey* to exhibit his claim for the money so paid, before any suit was brought upon the note ? But this is a stronger case than that supposed, for here were *mutual accounts*, the proper subjects of book charge. 1 *Sw. Dig.* 582. *Terrill* v. *Beecher,* 9 *Conn. R.* 344. And in such case, it is clearly not necessary for a party defendant to exhibit his claim within the time limited, to enable him to apply it in countervailing the charges of the plaintiff. The change of action from book debt to account, cannot deprive the defendant of a right incident to the nature of the claim. *Robbins* v. *Harvey,* 5 *Conn. R.* 335.

2. That the claim in question ought not to be rejected, on the ground of its having no connexion with the subject of this suit. *Hart* was *Starkey's* receiver of the 200 dollars; and *Starkey* could maintain an action of account againt him for it. *Smith* v. *Chapman,* 5 *Conn. R.* 23. 1 *Sw. Dig.* 579.

580, 1. In this form of action, both parties may be *actors ;* and the defendant having a claim which is a proper subject of the action of account, it ought to be allowed against the plaintiff's charges. The object of the action of account is to avoid circuity, and thus prevent litigation. The whole accounts between the parties, so far as they are adapted to this form of action, should, therefore, be adjusted, whether the items have, or have not, any immediate connexion one with another. Auditors in book debt and in account have the same power and are to proceed in the same manner. *Stat.* 102. *tit.* 10. *s.* 4. (ed. 1838.) But in book debt, the auditors may unquestionably apply any money which the plaintiff has received from the defendant, in satisfaction of a claim by the plaintiff for an equal sum in the defendant's hands. It is simply an application of money to meet a claim for money. *Hirst* v. *Peirse,* 4 *Price* 339. (2 *E. Ex. R.* 133.) *Smith* v. *Brush,* 11 *Conn. R.* 365.

*Ingham* and *Bulkeley,* for the defendants in error, contended, 1. That independent and disconnected claims between the parties to an action cannot be applied for the purpose of cancelling each other, either at law or in equity, except by agreement, or by virtue of the statute of set-off. *Gunn* v. *Scovill,* 5 *Day* 113. *Gaylord* v. *Couch,* 5 *Day* 230. *McLean* v. *McLean,* 1 *Conn. R.* 400. *Chandler* v. *Drew,* 6 *N. Hamp. R.* 469. 14 *Petersd. Abr.* 417. 1 *Chitt. Gen. Pract.* 665.

2. That there was no agreement, in this case, authorizing a set-off. On the contrary, the receipt shows, that the 200 dollars was left with *Hart,* for *safe-keeping* only, and was to be *handed back,* when called for.

3. That the claim in question does not fall within the provisions of our statute of set-off. *Stat.* 50. *tit.* 2. *c.* 1. *s.* 32. (ed. 1838.) Here *Hart,* (whom the plaintiffs represent,) did not live out of the state ; nor was he insolvent ; nor was any notice of set-off given at the time of pleading.

4. That this claim, not having been exhibited to the administrators within the time limited, cannot now be recovered. The statute is explicit, that " such creditor shall forever be debarred of his demand"—with a proviso which has no application to this case. *Stat.* 231. *tit.* 31. *c.* 1. *s.* 17. *Fearing* v. *Coit, Kirby* 423. *Spalding* v. *Butts,* 6 *Conn. R.* 28.

5. That a claim which cannot be recovered, cannot be set off. *Nichols* v. *Alsop*, 9 *Conn. R.* 362, 3.

HINMAN, J. The only question in this case, is, whether the remonstrance is sufficient to set aside the report of the auditors in the original suit : and this is to be determined upon the principles of the common law, without reference to the law of set-off as regulated by statute.

There was no plea or notice of set-off in the case ; and no claim is made that Mr. *Hart's* estate is insolvent ; or that there is any foundation in fact, for any ground of set-off mentioned in the statute. But it is insisted, that the two hundred dollars of Mr. *Starkey's* account, which the auditors rejected, ought, upon common law principles, to be applied in payment or liquidation of a like amount of the charges against him.

The principle, however, that disconnected and independent claims can not, as a general rule, (except by agreement, or by virtue of the statute of set-off,) be applied for the purpose of cancelling each other, is not denied. But the claim is, that it has no application to the case ; that, in the action of account, any matter which is the proper subject of account, whether connected with the claim for which the suit is brought or not, may be taken into consideration, by the auditors, and settled ; and that, at any rate, any account which the defendant may have, may be considered and applied in liquidation of arrears due on the account for which the suit is brought.

We do not understand the law to be so : on the contrary, we had supposed this action had always been considered rather more technical than any other. In 1 *Bac. Abr.* 31. *tit.* Accompt, (*Gwil.* ed.) it is said, that in consequence of the proceedings being difficult, dilatory and expensive, the action is now seldom brought, if the party have any other remedy. Hence, in *England,* and in most of the states where they have courts of chancery, the action is nearly superseded, by a bill in equity. 1 *Story Eq.* 431. And *Bronson,* J., in *McMurray* v. *Rawson,* 3 *Hill,* 59. speaking of the practice in *New-York,* says, it does not appear that more than one action of account was ever brought before, in that state ; and he expresses the opinion that the experiment would not be repeated. In this state, the action is more common ; and, having been modified, by the simplicity of our practice, has not been thought to be

much more dilatory or expensive than other actions.    But we have not made it, as counsel seem to suppose, like our action of book debt, a remedy for the recovery of a balance resulting from numerous items of account, not particularly mentioned in the declaration or plea: on the contrary, when the defendant is charged as bailiff in this action, the declaration always describes the goods or other estate of which he has the care and management; and if he is charged as receiver of moneys, it must be specified by whose hand the money was received.    2 *Sw. Dig.* 564, 5. *McMurray* v. *Rawson*, 3 *Hill*, 59. *Vin. Abr. tit.* Account. W. *Walker* v. *Holyday, Com. Rep.* 272.    The reason for so much particularity is, that the defendant may know the nature of the claim against him, and how to defend against it.

But this reason is equally strong in the case of a defendant. He ought not to surprise the plaintiff with matters of set-off, of which he gives no notice.    He may go into any defence connected with the account to settle which the suit is brought; as that it was never due, or that he has paid it; but he cannot go into other accounts, of which no notice has been taken in the pleadings, unless, indeed, they are so connected with the account for which the suit is brought, that the one cannot be settled without the others are also.    Upon any other principle, you would have. in this action, the strange practice of requiring the plaintiff to state, in the declaration, by whose hands the defendant received money, as has been done in this case, and would hold the declaration to be bad, if the statement was not made; and yet would permit him to go into evidence of money received by any other hand than the one stated; and with no other question or issue before the auditors, than whether the plaintiff or the defendant is in arrear upon the account mentioned in the declaration, you would suffer a defendant, by way of set-off, to go into any independent matters of account he might have against the plaintiff. Such a claim as this requires no argument to answer it.    Separate and distinct actions are given for the recovery of distinct claims; and, unless they have originated out of the same transaction, or, by some agreement, are so connected as to make it unjust that any thing but the balance should be recovered, they must always be pursued.    *Gunn* v. *Scovill*,

*5 Day* 113. *McLean* v. *McLean*, 1 *Conn. R.* 400. *Nichols* v. *Alsop*, 9 *Conn. R.* 357.

What, then, is the nature of the claims of the parties in this case? Are they, in any manner, connected with each other? They do not appear to have originated out of the same transaction. In this respect, they seem to be entirely independent. Mr. *Starkey's* two hundred dollars was part of the sum of five hundred, which, at two different times, he paid or delivered over to Mr. *Hart;* but for what purpose appears only by the receipt given on the 16th of *March*, 1837; and it is only by inference from this, that any part of it can be said to have been paid in consequence of the claims which *Starkey* had in his hands to collect. But if this may be inferred in regard to the three hundred dollars, from the fact, that he was to get his pay for that sum out of moneys he might thereafter collect; no such inference can be drawn in regard to the two hundred dollars, because it appears from the same receipt, that this sum was received for safe-keeping merely, and was to be returned, not paid, when called for. Regularly, nothing but Mr. *Starkey's* charges for his services and commissions in collecting the debts in his hands, and for money paid over in consequence of such collections, or in anticipation thereof, can be said to originate out of the transaction of the collection of those debts; and as it is only for them, that he is called upon, in the declaration, to account, he can not go into any other transaction between him and Mr. *Hart*, unless, by some agreement, it is connected with the debts. It was said, that inasmuch as the two sums were, at least in part, delivered over at the same time, and were evidenced by the same receipt, they became one sum, and ought, therefore, to stand upon the same footing in regard to their application. This might have been so, if the parties had not chosen to distinguish them; but they had a right to apply them as they pleased; and the receipt appears to have been carefully drawn for the very purpose of keeping them distinct.

As then it does not appear, that the payment of the two hundred dollars was caused by the transaction out of which Mr. *Starkey's* indebtedness accrued, was there any agreement that this money should be applied in satisfaction of that indebtedness? The receipt itself answers this question. It says, the money was to be returned, when called for; and that

it was delivered to Mr. *Hart* for safe-keeping merely. It cannot, therefore, upon any principle, be applied in payment of that indebtedness.

Again, it was claimed, that this sum of two hundred dollars, and also the account on which the plaintiffs recovered, were both proper subjects of the action of book debt; and in such case, it was not necessary either that he should exhibit his account to the administrators, or bring a separate action for the recovery of it; but that he had a right to apply one book debt in liquidation of the other, and could not be deprived of this right, in consequence of the plaintiffs choosing to pursue a different form of action. We do not think it necessary to go into the question which would arise here, if the accounts of these parties were both proper subjects of book debt, because we are satisfied that Mr. *Starkey's* charge, at any rate, was not a proper subject of this action; and though the same may be true also, in regard to the account against him, yet inasmuch as either of these accounts, being thus situated, is a complete answer to this claim, it is not necessary, at this time, to investigate the question, in regard to the account for which this suit was originally brought.

We think then, that the right to charge this two hundred dollars, as a book debt, or indeed as any debt, in the ordinary acceptation of the term debt, never existed. It does not appear to have been money borrowed by Mr. *Hart;* it was not delivered to him for his accommodation at all; but for the accommodation of Mr. *Starkey,* that it might be safely kept for him. The peculiar phraseology of the receipt seems to imply, that the money should not be used by Mr. *Hart* at all; but that he should keep it safely, as a special deposit, and return the same identical money, when called for. The parties provide in the receipt, that *credit* should be given for the three hundred dollars. Of course, credit was not to be given for the other sum; otherwise, this distinction would not have been made. The manner in which Mr. *Starkey* was to get his *pay* for the larger sum, was specified; but the two hundred dollars was not to be paid, but *handed* to him, when called for. Why were these intelligent men so careful to use different words to express the obligation of Mr. *Hart* in regard to these two sums, if the same thing was intended by both expressions? This money, then, having been deposited

*Middlesex,*
July, 1846.

Starkey
*v.*
Peters.

with Mr. *Hart*, to be handed back, only when specially called for, could not become a debt, for which any suit could be brought, until first demanded; and there is no evidence that any demand has ever been made. Indeed, the evidence is the other way, in regard to any demand of the administrators within the time limited by the court of probate; for although Mr. *Starkey* did present an account to them against the estate, yet this sum was not included in it : and indeed, it does not appear that they were ever notified of this claim until after this suit was brought, though they might have been.

We think, therefore, the remonstrance is insufficient to set aside the report: consequently, there is no error in the judgment complained of.

In this opinion the other Judges concurred.

Judgment affirmed.